## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JUSTIN G. LUBBERS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: |
| Plaintiff(s), | CLASS ACTION COMPLAINT |
| v. | |
| FLAGSTAR BANCORP INC., ALESSANDRO P. DINELLO, and PAUL D. BORJA, | |
| Defendants. | JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Justin G. Lubbers ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Flagstar Bancorp Inc., ("Flagstar" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased the securities of Flagstar from January 22, 2014 to August 26, 2014, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against Flagstar and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Defendant Flagstar is the holding company for Flagstar Bank, FSB ("Flagstar Bank").  Flagstar Bank accepts deposits from the general public and originates or acquires residential mortgage loans. Flagstar Bank also originates consumer, commercial real estate, and non-real estate commercial loans and it operates predominantly in Michigan and Indiana, as well as throughout the United States.  The Company is a Michigan corporation whose shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "FBC."

3.      Throughout the Class Period, Defendants made materially false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects, performance, and compliance with federal law.  Specifically, during the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) dating back to 2011, the Company's loss mitigation practices and default servicing operations were not in

compliance with various federal consumer financial laws promulgated by the Consumer Financial Protection Bureau ("CFPB"); (ii) the Company lacked proper internal controls; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

4.    On August 26, 2014, the Company filed a Form 8-K with the SEC, announcing that it has begun settlement discussions with the CFPB over alleged violations of consumer finance laws dating back to 2011.  In the 8-K, the Company stated, in part:

> Flagstar Bancorp, Inc., the holding company of Flagstar Bank, FSB (the "Bank"), announced today that the Bank has commenced discussions with the Consumer Financial Protection Bureau, or CFPB, related to alleged violations of various federal consumer financial laws arising from the Bank's loss mitigation practices and default servicing operations dating back to 2011. The Bank previously provided the CFPB with documents and other information concerning the Bank's loss mitigation practices and default servicing operations in response to Civil Investigative Demands received from the CFPB. While the Bank intends to vigorously defend against any enforcement action that may be brought, it has commenced discussions with the CFPB staff to determine if a settlement can be achieved. Those discussions are ongoing.

5.    As a result of these allegations, Mark Palmer, an analyst at BTIG, downgraded its rating on Flagstar to sell, noting that the "allegations raise questions regarding servicing operations amid uncertainty of potential rebound of its mortgage business."

6.     On this news, Flagstar stock fell $0.83, or almost 4.5%, on unusually heavy trading volume, to close at $17.66 on August 27, 2014.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b), as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

4

## PARTIES

12.    Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Flagstar at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.    Defendant Flagstar is a Michigan corporation with its principal executive offices located at 5151 Corporate Drive, Troy, MI 48098-2639. Flagstar's common stock trades on the NYSE under the ticker symbol "FBC."

14.    Defendant Alessandro P. DiNello ("DiNello") has served as the Company's President and Chief Executive Officer at all relevant times.

15.    Defendant Paul D. Borja ("Borja") has served as the Company's Executive Vice President and Chief Financial Officer at all relevant times.

16.    Defendants referenced above in ¶¶ 14 and 15 are sometimes referred to herein, collectively, as the "Individual Defendants."

17.    Defendant Flagstar and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.    Flagstar operates as the holding company for Flagstar Bank, which provides various financial products and services to individuals and businesses in the United States.   Flagstar Bank's Mortgage Banking segment originates, acquires, sells, and services mortgage loans through home loan centers, national call centers, Internet, unaffiliated banks, and mortgage brokerage companies.   Its Community Banking segment offers various financial products and services to individuals, small and middle market businesses, and mortgage lenders.

19.    The Company also offers telephone banking services; government banking products; and treasury management services, such as remote deposit and merchant services.

20.    As of December 31, 2013, Flagstar operated through a regional office in Jackson, Michigan; 111 banking centers in Michigan; 39 home loan centers in 19 states; and 9 wholesale lending offices.  Flagstar was founded in 1987.

## Materially False and Misleading
## Statements Issued During the Period

21.     On January 22, 2014, the first day of the Class Period, the Company issued a press release and filed a Form 8-K with the SEC, announcing financial and operating results for the fourth quarter and full year ended December 31, 2013. For the fourth quarter, net income applicable to common stockholders was $161.91 million, or $2.77 per diluted share, compared to net income applicable to common stockholders of $68.19 million or $1.12 per diluted share for the same period in the prior year.  For the year, net income applicable to common stockholders was $261.2 million or $4.37 per diluted share, compared to net income applicable to common stockholders of $68.38 million or $0.87 per diluted share for the prior year.

22.     On March 5, 2014, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants DiNello and Borja, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants DiNello and Borja, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.    In the 10-K, the Company stated:

*CFPB and Regulations Related to Mortgage Origination and Servicing.* In January 2013, the CFPB issued a series of final rules related to mortgage loan origination and mortgage loan servicing. Compliance with these rules will likely increase our overall regulatory compliance costs. We continue to evaluate the rules to determine the level of their long-term impact on our mortgage loan origination and servicing activities.

24.    On April 23, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing financial and operating results for the first quarter ended March 31, 2014.  Net loss applicable to common stockholders was $78.9 million, or $1.51 loss per diluted share, compared to net income applicable to common stockholders of $22.2 million, or $0.33 per diluted share for the same period in the prior year.

25.    On May 9, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants DiNello and Borja, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants DiNello and Borja, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26.    On July 22, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing financial and operating results for the second

quarter ended June 30, 2014.  Net income applicable to common stockholders was $25.5 million, or $0.33 per diluted share, compared to net income applicable to common stockholders $65.8 million, or $1.10 per diluted share, for the same period in the prior year.

27.    On July 29, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants DiNello and Borja, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained SOX certifications signed by defendants DiNello and Borja, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.    The statements referenced in ¶¶ 21–27 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, prospects, and compliance with federal law, which were known to Defendants and/or recklessly disregarded by them.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) dating back to 2011, the Company's loss mitigation practices and default servicing operations were not in compliance with various federal consumer financial laws promulgated by the CFPB; (ii) the Company lacked proper internal controls; and (iii) as a result of the above, the

Company's financial statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

29.    On August 26, 2014, the Company filed a Form 8-K with the SEC, announcing that it has begun settlement discussions with the CFPB over alleged violations of consumer finance laws dating back to 2011.  In the 8-K, the Company stated, in part:

> Flagstar Bancorp, Inc., the holding company of Flagstar Bank, FSB (the "Bank"), announced today that the Bank has commenced discussions with the Consumer Financial Protection Bureau, or CFPB, related to alleged violations of various federal consumer financial laws arising from the Bank's loss mitigation practices and default servicing operations dating back to 2011. The Bank previously provided the CFPB with documents and other information concerning the Bank's loss mitigation practices and default servicing operations in response to Civil Investigative Demands received from the CFPB. While the Bank intends to vigorously defend against any enforcement action that may be brought, it has commenced discussions with the CFPB staff to determine if a settlement can be achieved. Those discussions are ongoing.

30.    As a result of these allegations, Mark Palmer, an analyst at BTIG, downgraded its rating on Flagstar to sell, noting that the "allegations raise questions regarding servicing operations amid uncertainty of potential rebound of its mortgage business."

31.    On the news, Flagstar stock fell $0.83, or almost 4.5%, on unusually heavy trading volume, to close at $17.66 on August 27, 2014.

32.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Flagstar securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Flagstar securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Flagstar or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

37.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Flagstar;

- whether the Individual Defendants caused Flagstar to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Flagstar securities during the Class Period

were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

39.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Flagstar securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the

13

Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Flagstar securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

40.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

41.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5 Against All Defendants

42.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Flagstar securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Flagstar securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

45.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for

15

Flagstar securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Flagstar's finances and business prospects.

46.     By virtue of their positions at Flagstar, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Flagstar securities from their personal portfolios.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and

control.   As the senior managers and/or directors of Flagstar, the Individual Defendants had knowledge of the details of Flagstar's internal affairs.

49.   The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Flagstar.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Flagstar's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Flagstar securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Flagstar's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Flagstar securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.   During the Class Period, Flagstar securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants

made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Flagstar securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Flagstar securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of Flagstar securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.    During the Class Period, the Individual Defendants participated in the operation and management of Flagstar, and conducted and participated, directly and indirectly, in the conduct of Flagstar's business affairs.  Because of their senior positions, they knew the adverse non-public information about Flagstar's misstatement of income and expenses and false financial statements.

55.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Flagstar's financial condition and results of operations, and to correct promptly any public statements issued by Flagstar which had become materially false or misleading.

56.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Flagstar disseminated in the marketplace during the Class Period concerning Flagstar's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Flagstar to engage in the wrongful acts complained of herein.

The Individual Defendants therefore, were "controlling persons" of Flagstar within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Flagstar securities.

57.   Each of the Individual Defendants, therefore, acted as a controlling person of Flagstar.  By reason of their senior management positions and/or being directors of Flagstar, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Flagstar to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Flagstar and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Flagstar.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: September 5, 2014

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Gustavo F. Bruckner
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
E-mail:   *jalieberman@pomlaw.com*
           *gfbruckner@pomlaw.com*
           *fmcconville@pomlaw.com*

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail:  *pdahlstrom@pomlaw.com*

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Patrick E. Cafferty
101 North Main Street, Suite 565
Ann Arbor, MI 48104
Telephone: (734)769-2144
Facsimile: (734) 769-1207
E-mail:  *pcafferty@caffertyclobes.com*
Mich. Bar No. P35613

***Attorneys for Plaintiff***